"Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 939 | **DATE** | 4/16/2003 |
| **CASE TITLE** | Cox vs. American Drug Stores | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Osco Drug Stores' Motion for Summary Judgement is granted. Status hearing set for 4/23/03 is stricken. Any other pending dates are stricken. Any pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | APR 17 2003 date docketed | 50 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | AJK docketing deputy initials | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | 4/16/2003 date mailed notice | |
| TH✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | TH mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATHLEEN M. COX, )
)
      Plaintiff, )
)
) No. 02 C 939
v. )
)
AMERICAN DRUG STORES d/b/a )
OSCO DRUG STORES, )
)
      Defendant. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, Judge:

      Kathleen Cox filed a complaint against Osco Drug Stores ("Osco") on February 7, 2002. In her amended complaint, Cox claims that Osco engaged in gender discrimination and retaliation. (R. 21-1, Am. Compl. ¶ 3.) Osco moves for summary judgment, claiming that the undisputed facts show that it is entitled to judgment as a matter of law. The Court agrees and grants summary judgment in Osco's favor, as detailed below.

## FACTS

      Cox worked at Osco from June 10, 1996 through June 11, 2001 as a loss prevention supervisor. (R. 31-3, Def's Statement of Undisputed Facts ¶ 2.) Her department at Osco was responsible for investigating alleged wrongdoing and policy violations, such as sexual harassment and theft. (Id. ¶ 3.) Cox specifically investigated employee wrongdoings and policy violations. (R. 42-1, Pl.'s Statement of Additional Facts ¶ 1.)



## I. Cox's Work In Wisconsin

In 1998, Cox transferred from Waukegan, Illinois to Milwaukee at the request of Tom Cairns, a district loss prevention manager. (R. 31-3, Def's Statement of Undisputed Facts ¶ 8.) While working in Milwaukee, one of Cox's job duties was to conduct sexual harassment interviews at various stores. (*Id.* ¶ 10.) In May 1999, Cairns stopped supervising Cox because Osco transferred him from Milwaukee to Illinois. (*Id.* ¶ 11.) Cox began reporting to Bruce Abraham, the senior district loss prevention manager in Milwaukee. (*Id.* ¶ 12.)

### A. Offensive Comments in Wisconsin

#### 1. Daryl Gunter

Daryl Gunter was an operations manager at Osco Store No. 1301 in Milwaukee. (R. 31-3, Def's Statement of Undisputed Facts ¶ 14.) He had no authority to hire, fire, demote or transfer Cox. (*Id.* ¶ 19.) In May 1999, Gunter told Cox that in order for him to have sex with his wife he would have to take cash loans from the safe to pay her. (*Id.* ¶ 14.) Cox complained of this statement to Cairns, who responded that "he would handle it." (*Id.* ¶¶ 15-16.)[1] After the incident, Cox had no more contact with Gunter.

#### 2. Security guard

Sometime between May and September 1999, Cox saw a security guard watching his children in a parked car. (R. 31-3, Def's Statement of Undisputed Facts ¶ 21.) The security guard, who was supposed to be on duty, worked for an outside vendor and was not an employee of Jewel or Osco. (*Id.* ¶ 27.) After Cox told the security guard that his behavior was

---

[1] Cairns does not remember Cox ever complaining to him about Gunter and Osco has no record of a complaint. (R. 31-3, Def's Statement of Undisputed Facts ¶¶ 17-18.)

inappropriate, he told her to "mind her own fucking business" and called her a "fucking bitch." (*Id.* ¶ 22.) Cox telephoned Cairns to report the incident. (*Id.* ¶ 23.) Cairns said that he would contact the supervisor of security. (*Id.*)[2] After this incident, the security guard said nothing else offensive to Cox. (*Id.* ¶ 26.)

### 3. David DeJesus

David DeJesus was a store security manager at Jewel Store No. 453 in Milwaukee. (R. 31-3, Def's Statement of Undisputed Facts ¶ 39.) Cox did not report to DeJesus, even though he was a level higher than her. (*Id.* ¶ 40.) He had no authority to hire, fire, demote, promote or transfer Cox. (*Id.* ¶ 41.) Cox was training DeJesus on October 25, 1999, when he told her that she only had her job was because she was sleeping with all three of her bosses. (*Id.* ¶ 39.) A few days later, DeJesus told Cox that females should wear camouflage panties. (*Id.* ¶ 42.) Cox complained to management about DeJesus. (*Id.* ¶ 43.)

As a result of her complaint, two Osco employees attempted to interview Cox. (*Id.*) Because Cox was too embarrassed to talk about DeJesus' comment, she presented her interviewers a written statement instead. (*Id.* ¶ 44.) She stated that two female employees witnessed the statement. (*Id.* ¶ 45.) These two female employees later admitted, however, that they, instead of DeJesus, made the comments about the panties. (*Id.* ¶ 46.)

### 4. Reimbursement for mileage

From September through November 1999, Bruce Abraham denied Cox's requests for reimbursement for mileage driven to conduct work-related interviews. (R. 31-3, Def's Statement

---

[2] As with the Gunter incident, Cairns does not recall that Cox reported this incident to him and Osco has no record of a complaint to management. (R. 31-3, Def's Statement of Undisputed Facts ¶¶ 24-25.)

3

of Undisputed Facts ¶ 28.) Osco, however, has since reimbursed Cox for these miles. (*Id.* ¶ 30; R. 43-1, Pl.'s Objections to Def's Undisputed Facts ¶ 30.)

### B. Travel in Wisconsin

Because Osco was short-staffed in the Milwaukee area, Cox took on many duties that were not ordinarily a part of her job responsibilities as a senior loss prevention supervisor, including traveling to different stores to conduct sexual harassment interviews. (R. 31-3, Def's Statement of Undisputed Facts ¶¶ 31-32.) The amount of traveling and added hours caused Cox to feel a lot of pressure. (*Id.* ¶ 35.) As early as the Fall 1998, Cox complained to Cairns about the amount of traveling she was required to do. (*Id.* ¶ 34.) She expressed concern about having to travel to stores that she thought were located in high-crime areas. (*Id.*)

### C. Absence on December 31, 1999

Osco required the whole loss prevention department to work on December 31, 1999. (R. 31-3, Def's Statement of Undisputed Facts ¶ 48.) Cox expressed concern about her store assignment. (*Id.* ¶ 49.) She claimed that the store was located in a high crime area and she did not want to work there alone. (*Id.* ¶ 50.) Abraham told Cox that she would not be alone there. (*Id.*)

Cox called her supervisors to report that she would not be working on December 31, 1999 because her father-in-law had died. (*Id.* ¶ 53.) Abraham asked Cox to provide a death certificate. (*Id.*) Abraham testified that he suspected that Cox intentionally did not report to work because she was not satisfied with her assignment for that night. (*Id.* ¶ 55.) Initially, Cox refused to provide Abraham with the proof he requested. (*Id.* ¶ 56.) As a result, Abraham wrote her up for insubordination. (*Id.*) Cox then gave Abraham a letter from a funeral director that

indicated that she had attended the funeral services of her father-in-law on December 30, 1999. (*Id.* ¶ 57.) Osco eventually removed the write-up from her file. (*Id.* ¶ 58; R. 43-1, Pl.'s Objections to Def's Undisputed Facts ¶ 58.)

### D. Cox's Wisconsin discrimination charge

On January 22, 2000, Cox filed a discrimination charge with the EEOC and Wisconsin's Equal Rights Division. (R. 31-3, Def's Statement of Undisputed Facts ¶ 59.) In that charge, Cox complained that she was sexually harassed by DeJesus, that Osco denied her a promotion, that Osco refused to reimburse her miles, and that Osco disciplined her for refusing to provide proof of her father-in-law's death. (*Id.* ¶ 59.) Cox did not complain about Gunter's comment. (*Id.* ¶ 61.) Cox later withdrew her complaint. (*Id.* ¶ 60.)

## II. Cox's Work in Illinois

Osco honored Cox's request to transfer to the Waukegan, Illinois area on January 24, 2000. (R. 31-3, Def's Statement of Undisputed Facts ¶ 62.) Osco assigned Cox to one store ("Waukegan store"). (*Id.* ¶ 66.) As a result of the transfer, she reported to Chip Huguelot, another district loss prevention manager. She was grateful for the transfer and felt well-liked in Waukegan as of February 2000. (*Id.* ¶ 64.) Up until December 2000, Cox enjoyed her work at the Waukegan store. (*Id.* ¶ 67.)

Cox alleges, however, that colleagues made offensive sexual comments to her. (*Id.* ¶¶ 116, 124.) The transfer also caused a reduction in her hours and her duties because she was no longer able to travel to other stores, conduct internal theft or sexual harassment interviews, cross train security staff, or receive overtime. (*Id.* ¶ 68.) The overtime that she worked diminished substantially upon transfer. (R. 42-1, Pl.'s Statement of Add'l Facts ¶ 3.)

5

### A. Offensive Comments in Illinois

#### 1. Duke Goesseling

Duke Goesseling was a loss prevention supervisor at an Osco store in Grayslake, Illinois. (R. 31-3, Def's Statement of Undisputed Facts ¶ 116.) He had no authority to hire, fire, demote, promote, or transfer Cox. (*Id.* ¶ 122.) In April or May 2000, Goesseling made a joke about hearing a woman say she lost her "dildo" when she was really looking for frozen dill dough. (*Id.*) Goesseling also told Cox that his daughter said that his daughter's uncle, Tom Cairns, tried to pick her up, not knowing she was his niece. (*Id.* ¶ 120.) Cox did not report Goesseling's comments to anyone at Osco. (*Id.* ¶ 123.)

#### 2. Tom Cairns

Sometime before April 2000, Cairns told Cox in relation to a sexual harassment investigation that he was conducting that a pharmacist was having sex with a pharmacy technician. (R. 31-3, Def's Statement of Undisputed Facts ¶ 125.) In April or May 2000, Cairns made a comments to Cox about celebrity Pamela Anderson's breast reduction. (*Id.* ¶ 124.) Cox did not report Cairns' statements to anyone at Osco. (*Id.* ¶ 127.)

#### 3. David Stiver

David Stiver was an assistant manager at the Waukegan store. (R. 31-3, Def's Statement of Undisputed Facts ¶ 129.) He had no authority to hire, fire, demote, promote or transfer Cox. (*Id.* ¶ 136.) In February 2001, Stiver insinuated that Cox was a prostitute in the evenings. (*Id.* ¶ 129.) Cox reported Stiver's comments to management. (*Id.* ¶ 131.) Osco interviewed Stiver, who admitted that he jokingly asked if she was a prostitute. (*Id.* ¶ 133.) Osco counseled Stiver on Osco's policy on sexual harassment and ensured that he understood the ramifications of

inappropriate employee conduct. (*Id.* ¶¶ 134-35.) After this incident, Stiver made no other comments to Cox that she found to be offensive. (*Id.* ¶ 130.) Cox did, however, continue to work with him. (R. 42-1, Pl.'s Statement of Add'l Facts ¶ 21.)

### 4. Mike Luby

Mike Luby was a security manager at a Jewel store in Waukegan. (R. 31-3, Def's Statement of Undisputed Facts ¶ 137.) He had no authority to hire, fire, demote, promote, or transfer Cox. (*Id.* ¶ 146.) In February 2001, Luby told Cox in graphic detail about his sexual activities. (*Id.* ¶ 137.) He also told Cox that he had received "good news" that a woman he had intercourse with was not pregnant. (*Id.* ¶ 138.) Cox complained about Luby's comments to her supervisor, who said that he would handle the situation. (*Id.* ¶ 140.) A female district loss prevention manager met with Cox to investigate her allegation regarding Luby, while two males met with Luby. (*Id.* ¶ 141-42.) After the investigation, Osco found that Cox's accusations against Luby were unfounded. (*Id.* ¶ 144.) Luby said nothing else offensive to Cox. (*Id.* ¶ 145.)

## B. Travel in Illinois

The Waukegan store was large and busy. (R. 31-3, Def's Statement of Undisputed Facts ¶ 69.) As a result, Cox had enough tasks to keep her busy for a full forty-hour week. (*Id.* ¶ 71.) Other loss prevention employees were also assigned to work in only one store if the store was large enough or in a high-crime area. (*Id.* ¶¶ 70, 73.) Cox replaced an employee at the Waukegan store who worked exclusively at the store. (*Id.* ¶¶ 74-75.) Cox learned in June or July of 2000 that she would not be traveling anymore as a part of her new assignment. (*Id.* ¶ 76.)

7

### C. Reduction of Duties in Illinois

#### 1. Interviews

After Cox's transfer to Waukegan, she no longer conducted sexual harassment interviews. (R. 31-3, Def's Statement of Undisputed Facts ¶ 78.) Instead, two female district loss prevention managers interviewed female employees. (*Id.*) Those managers were at the same level as the person to whom Cox reported. (*Id.* ¶ 79.)

Osco did not allow Cox to conduct three or four particular theft interviews in October or November 2000. (R. 31-3, Def's Statement of Undisputed Facts ¶ 84.) Osco, however, did not pay Cox any less for not conducting those interviews. (Cox Dep. at 164-65.) Additionally, Cox began conducting internal theft interviews again after October 2000. (R. 31-3, Def's Statement of Undisputed Facts ¶ 86.)

#### 2. Cross-Training Security Staff

At the Waukegan store, Cox did not conduct additional training of security staff. (R. 31-3, Def's Statement of Undisputed Facts ¶ 89.) She concedes, however, that she should not have been doing this type of training. (*Id.* ¶ 88.) As a result of not cross-training security staff, Cox was not paid any less. (*Id.* ¶ 89.)

#### 3. Overtime and training

Cox alleged in her Complaint that she was denied overtime. Cox, along with another security manager, prepared the employees' schedules. (R. 31-3, Def's Statement of Undisputed Facts ¶ 98.) Cox earned overtime in both 2000 and 2001. (*Id.* ¶ 99.)

Cox also claims that she was denied training because she initially was not supposed to attend a seven-week training program in April 2000. (*Id.* ¶ 100.) After Cox expressed an interest

in attending that program, Cairns called her and invited her to attend. (*Id.* ¶ 104.) Cox then received this training. (*Id.* ¶ 105.)

### 4. Promotions

While in Waukegan, Cox held the position of senior loss prevention supervisor. (R. 31-3, Def's Statement of Undisputed Facts ¶ 107.) The typical progression after senior loss prevention supervisor is first to security manager and then to district loss prevention manager. (*Id.* ¶ 108.) Osco has never promoted an employee directly from senior loss prevention supervisor to district loss prevention manager. (*Id.* ¶ 110.)

In February 2000, Osco denied Cox's bid for promotion to two vacant district loss prevention manager positions. (R. 31-3, Def's Statement of Undisputed Facts ¶ 111.) At the time, Cox had worked for Osco for four years and was two classes short of an associate's degree in criminal justice. (*Id.* ¶ 114.)

Osco chose to promote two security managers to those open slots. (R. 31-3, Def's Statement of Undisputed Facts ¶ 113.) Paul Reddington was one of those that Osco promoted. (*Id.*) Reddington had worked for Osco for sixteen years, had a bachelor's degree in criminal justice and had served as a temporary district loss prevention manager for one year. (*Id.*) The second employee promoted, Bob Kelley, had worked for Osco for fourteen years. (*Id.*) Kelley was twenty-one hours shy of a bachelor's degree in criminal justice and served as a temporary district loss prevention manager for almost a year. (*Id.*)

### D. Lottery investigation

Cox conducted an unauthorized investigation into a lottery payout in March 2001 by Osco's store manager. (R. 31-3, Def's Statement of Undisputed Facts ¶¶ 148, 155.) During the

9

investigation, Cox gathered witnesses statements, which she refused to turn over to the Osco's director of human resources. (*Id.* ¶¶ 149-51.) Cox also refused to release the names of the people that she interviewed during her lottery investigation. (*Id.* ¶ 152.)

### E.     Title change

In April 2001, Osco lowered Cox's job title from senior loss prevention supervisor to loss prevention supervisor. (R. 31-3, Def's Statement of Undisputed Facts ¶ 153.) Osco changed her title after concluding that Cox was insubordinate and in violation of company policy for refusing to cooperate and for conducting the unauthorized lottery investigation after Osco told her to stop the investigation. (*Id.* ¶ 155.) As a result of the title change, Osco did not pay Cox any less money. (*Id.* ¶ 154.) Osco did, however, transfer Cox from the Waukegan store given the deterioration of trust between Cox and the store manager. (*Id.* ¶ 156.) Osco had given Cox the option either to transfer to one of several stores where she could keep her old title or to transfer to a store closer to her home with a demotion in title only. (*Id.* ¶ 157.) Cox opted for the title change. (*Id.* ¶ 159.)

### III.    Cox's Injuries

In 1999 and 2000, Cox began to get sick with dry heaves and would cry. (R. 42-1, Pl.'s Statement of Add'l Facts ¶ 9.) She also began to get panic attacks. (*Id.*) In February 2001, after Stiver's prostitute comments, Cox suffered from vomiting, diarrhea and sleep deprivation. (Pl.'s Dep. at 187.)

### IV.    Cox Files Discrimination Charges

On July 11, 2001, Cox filed a charge of discrimination with the EEOC and the Illinois Department of Human Rights. (R. 31-3, Def's Statement of Undisputed Facts ¶ 161.)

## V. Osco's Sexual Harassment Policy

Throughout Cox's employment, Osco had a written policy that prohibited sexual harassment. (R. 31-3, Def's Statement of Undisputed Facts ¶ 4.) Osco distributed this policy to all employees. (*Id.*) Additionally, Osco had a written complaint procedure that outlined the procedures for reporting sexual harassment to management. (*Id.* ¶ 5.)

Osco's policy was to promptly investigate all allegations of sexual harassment, then consider the nature and severity of the alleged harassment in determining the most appropriate response. (*Id.* ¶ 6.) Additionally, Osco's policy called for it to take prompt and effective remedial measures against the harassser. (*Id.* ¶ 7.)

## STANDARDS

Summary judgment should be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica Indiana*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue, however, may not rest on its pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. A mere scintilla of evidence in support of the non-movant's position is insufficient. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

A party can successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The Court must view all evidence and draw all reasonable inferences in the light most favorable to Plaintiff, as the non-moving party. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

## ANALYSIS

Osco moves for summary judgment on several grounds. First, it argues that many of Cox's allegations are time-barred. Second, it maintains that Cox cannot meet her *prima facie* burden of establishing a hostile work environment claim.[3] Third, Osco argues that Cox cannot sustain a retaliation claim against it because Osco took no adverse action against Plaintiff.

### I. Most Of Plaintiff's Allegations Are Time-Barred

Osco argues that much of the conduct that Cox complaint about is time-barred because it occurred more than 300 day before she filed an EEOC charge. *See* 42 U.S.C. § 2000e-5(e)(1). Therefore, Osco maintains, the Court should not consider conduct that occurred before September 14, 2000. Cox counters that her claims are timely because they are based on a continuing violation theory. Both parties agree that the recent Supreme Court case *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) controls this issue.

In *Morgan*, the Supreme Court distinguished between claims based on discrete acts of discrimination and those alleging hostile work environments. The Supreme Court found that a

---

[3] Because Cox cannot establish a hostile work environment claim, the Court does not address Osco's argument that it is not liable for the alleged hostile work environment.

plaintiff can only file a charge to cover discrete acts (such as termination, failure to promote, and refusal to hire) that occurred within the appropriate time period. *Id.* at __, 122 S.Ct. at 2073. Accordingly, Cox's allegations about Osco's failure to promote her, her transfer to Waukegan, Osco's failure to reimburse her for mileage, Osco's treatment related to her father-in-law's death, and her loss of travel and overtime are all time-barred.

The Supreme Court also found in *Morgan* that hostile work environment claims can include conduct that occurs outside of the 300 days so long as "an act contributing to the claim occurs within the filing period." *Id.* at __, 122 S.Ct. at 2074. There also must be some relation between the conduct that occurred outside of and within the time period:

> if an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.

*Id.* at __, 122 S.Ct. at 2075. The Supreme Court affirmed the appellate court's finding in *Morgan* that the early conduct was related to the later conduct because they involved "the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Id.* at __, 122 S.Ct. at 2076.

Here, David Stiver and Mike Luby made the only comments that occurred within the time period. Stiver served as an assistant manager at the Osco store in Waukegan, Illinois, while Luby was a security manager at a Jewel store that was also in Waukegan. Stiver made a comment that Cox was a prostitute in the evenings. Luby told Cox about his sexual activity and that a sexual partner of his was not pregnant.

None of the incidents before September 2000 have any relation to these comments by

13

Stiver and Luby. The earlier statements were not made by Stiver, Luby, or anyone holding the same position as them; they did not contain the same subject matter; and they occurred at different stores.[4] Further, Cox complains of only six comments during the two years that she worked in Milwaukee and Waukegan. They were therefore not frequent as required by *Morgan*. *See Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir. 1995) (nine comments over seven months not frequent enough to support hostile work environment claim). The conduct can only be viewed as "merely discrete, isolated, and completed acts which must be regarded as individual violations." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir. 1994). Accordingly, as the others are time-barred, the Court will only consider those comments by Stiver and Luby in determining whether a hostile work environment existed during Cox's employment at Osco.

## II. The Undisputed Facts Show That No Hostile Work Environment Existed

Sexual conduct in the workplace only violates Title VII if it is so severe or pervasive that it alters the conditions of the plaintiff's employment and creates an abusive working environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 2283, 141 L.Ed. 662 (1998). The sexually objectionable environment must be both objectively and subjectively offensive. *Id.* at 787, 118 S.Ct. at 2283. To determine whether an environment is sufficiently hostile or abusive under the objective standard, a court must look at all the circumstances, including: the frequency of the conduct, the severity of the conduct, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc*, 510 U.S. 17, 22,

---

[4] It is unclear from the parties' statements of fact where Tom Cairns' comments in April or May 2000 occurred. Cairns' comments, however, are not part of the same hostile work environment claim because they were otherwise unrelated to those by Stiver or Luby.

14

114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). Simple teasing, offhand comments, and isolated incidents will normally not amount to a hostile work environment. *Faragher*, 524 U.S. at 786, 118 S.Ct. at 2283. The standard is demanding so that Title VII does not become a "general civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). Courts should filter out complaints attacking "sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788, 118 S.Ct. at 2284 (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)).

One Seventh Circuit case is especially illustrative of these stringent requirements. In *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir. 1995), a jury found that a hostile work environment existed because a male supervisor had made several offensive comments to a female employee over a period of several months. The supervisor called the plaintiff a "pretty girl," he made a grunting sound when she turned to leave his office, he commented that his office became hot only after the plaintiff had entered the room, he told her that a public-address announcement meant that "[a]ll pretty girls" had to "run around naked," and he made a masturbation gesture in her presence. *Id.* at 430. The Seventh Circuit reversed the verdict because the incidents could not reasonably add up to sexual harassment under the objective measure since:

> [The supervisor] never touched the plaintiff. He did not invite her, explicitly or by implication, to have sex with him, or to go out on a date with him. He made no threats. He did not expose himself, or show her dirty pictures. He never said anything to her that could not be repeated on primetime television.

*Id.* at 431. The court noted that the conduct was spread out over several months, which minimized its emotional impact on the plaintiff. *Id.*

Similarly, providing Cox with all reasonable inferences, the evidence does not amount to

15

a hostile work environment as a matter of law. There is no evidence that anyone ever touched her, made an advance on her, threatened her, exposed himself, or showed her pornographic pictures. Only the prostitute comment had anything to do with her gender and it was not severe enough to itself establish a hostile work environment. Further, the comments were not frequent or pervasive.[5] *See id.* (nine comments in seven months not frequent enough); *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996) (three sexually suggestive comments made over three month period not sexual harassment).

Cox simply cannot show that her work environment was objectively hostile or abusive. Instead, the conduct falls into the Seventh Circuit's "safe harbor for employers" because the conduct is "too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex." *Galloway v. General Motors Servs. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996), *abrogated on other grounds by Morgan*, 536 U.S. at 101, 122 S.Ct. at 2061. Accordingly, Osco is entitled to judgment as a matter of law on Cox's hostile work environment claim.

### III. Osco Is Entitled To Judgment As A Matter Of Law On Plaintiff's Retaliation Claim

In order to establish a *prima facie* case of retaliation, a plaintiff must show that: "(1) after lodging a complaint about discrimination, (2) only she, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) she was performing her job in a satisfactory manner." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir.), *cert. denied*, ___ U.S. ___, 123 S.Ct. 79, 154 L.Ed.2d 134

---

[5] These points are true even if the Court considers the conduct that occurred before September 14, 2000.

(2002). If a plaintiff is able to make her *prima facie* showing, then it is up to the defendant to proffer a non-discriminatory reason for its action. *Id.* The burden then shifts back to the plaintiff to show that the defendant's proffered reason was merely a pretext for discrimination. *Id.* If the defendant's proffered reason goes unrebutted, it is entitled to summary judgment. *Id.* at 644.

Osco argues that it is entitled to summary judgment because Cox cannot establish a *prima facie* case for retaliation and because she cannot rebut Osco's proffered reason for its action. Plaintiff's response to this contention is found only in one paragraph of her memorandum:

> She was demoted, she was transferred, she was required to continue to train De'Jesus [sic]. Her income was diminished substantially. The employer has submitted nothing to rebut her allegations other than to say her hourly wages stayed the same. The employer's offer to transfer her 50 miles away is an adverse action, even though the employer has called it a slightly longer commute.

(R. 41-1, Pl.'s Mem. in Opposition to Def.'s Mot. for Summ. J. at 13.) In this one paragraph, Cox does not inform this Court how it can meet the *prima facie* showing under *Stone*. She does not state which one of her complaints was the basis of Osco's retaliation. She does not argue that other similarly situated employees who did not complain were not subject to the same adverse action. Additionally, Cox neither argues that she performed her job adequately nor points to any evidence that would support such a contention. Finally, Cox does not rebut via evidence or argument that Osco's proffered reason for demoting her – that she was insubordinate regarding a lottery investigation – was merely a pretext for discrimination. It is clear under these circumstances that Osco is entitled to summary judgment on her retaliation claim. *See Stone*, 281 F.3d at 644.

## CONCLUSION

The undisputed facts show that Osco is entitled to judgment as a matter of law. Accordingly, the Court grants Osco's motion for summary judgment.

DATED: April 16, 2003  ENTERED

*[signature]*

AMY J. ST. EVE
United States District Judge